### 14915.   JONES v. NORRIS N. SMITH COMPANY.

BELL, J.   The plaintiff alleged an express contract with the defendant real-
estate broker, providing that they would pool their interests with refer-
ence to the sale of certain property which the plaintiff claimed had been
listed by the owner with each for sale, and that the commissions should
be equally divided between them in case of a sale by either. The plain-
tiff further alleged that a sale was thereafter made by the defendant,
for which the defendant received a given sum from the owner as com-
missions, and that the plaintiff was entitled to a half of this sum, which
the defendant refused to pay. The defendant contended that the prop-
erty was listed with it exclusively, and that it only agreed to divide
commissions in case of a sale to a purchaser "produced" by the plain-
tiff, and that the plaintiff did not furnish any customer. A verdict was
found for the defendant; and the plaintiff excepted to the overruling
of his motion for a new trial. The defendant company's officer testified:
"It is customary, where a real-estate agent holds an exclusive sales con-
tract, to deal with other agents on the theory of them producing a cus-
tomer,—to split; and I so told [the plaintiff] at the time." Another
witness for the defendant testified to the existence of a custom among
real-estate agents in the vicinity where the alleged contract was made,

to the effect that where an agent held an exclusive listment, "and another agent produced a customer who bought, the commission would be divided; if that other agent did not produce a customer who bought, there was no division." The evidence quoted was objected to in each instance upon the ground that the plaintiff was suing upon an express contract, and in such a case proof of a custom would be irrelevant and inadmissible. With reference to this evidence the court charged the jury as follows: "I permitted this evidence to go to you, not that it might defeat a recovery in this case by itself, because you are not trying this case upon a custom, but upon a contract, if there was any contract, But the court has permitted this evidence to go to you to aid you, if it does aid you, in determining the question of whether or not Mr. Smith made a contract of the character he claims he made, or a contract of the character Mr. Jones claims he made at the time. If you find this evidence aids you in determining that question any way, you may consider it, otherwise you will not consider it." This charge is assigned as error upon substantially the same ground as that urged to the admission of the evidence. *Held:*

1. The testimony of the defendant's officer as set out above was admissible as a part of the res gestæ.. Civil Code (1910), § 5766; *Cook* v. *Pinkerton,* 81 *Ga.* 89 (3) (7 S. E. 171, 12 Am. St. Rep. 297).

2. "While, strictly speaking, the proper office of usage is to aid in the interpretation of contracts, yet evidence of the usual or customary way of doing a certain thing will frequently be admitted for other purposes in order to shed light on, or explain, the acts of parties or to arrive at the intent underlying such acts." 29 Am. & Eng. Enc. Law, 417. The defendant having offered evidence which if true would have shown that the plaintiff was told of the custom applying in the defendant's line of business, proof of its existence as a part of the surrounding circumstances, or atmosphere, of the transaction in question was not improper. In view of the purposes to which the court limited the testimony relating to the custom, as given by the defendant's witness other than its officer, neither the admission of the evidence nor the court's charge in reference thereto was cause for a new trial. Civil Code (1910), §§ 5745, 5766.

3. The evidence authorized the verdict.

4. The rulings made above will dispose of all grounds of the original motion for a new trial and the amendment thereto. After this was overruled, the plaintiff filed an extraordinary motion for a new trial, based upon alleged newly discovered evidence, from which and the record the following facts are disclosed: The plaintiff alleged that the contract upon which he relied was made in October, 1919. The suit was filed on November 13 next following. The case was tried twice, the last time on April 13, 1923. The newly discovered evidence is contained in the affidavits of Stansell and Davis, who depose that they were present and heard the conversation between the plaintiff and the defendant's officer at the time of the making of the alleged contract on which the plaintiff sued. They depose to facts which would show that the agreement was made as contended by the plaintiff. In undertaking to account for his diligence in discovering this evidence, the plaintiff movant avers in his extraordinary motion that "he knew that there were two men

standing at the place testified to by them, but in the way they were standing at the time, and his attention being on the matter in hand between himself and Smith, he did not recognize who they were; that he used all ordinary care and diligence to locate and identify these men who were so standing at said place, before the trial of said case, and then again before the trial of the motion for new trial; that he inquired of numerous parties trying to learn the names of said parties and failed utterly to do so; that during the week beginning July 2 [1923] some one suggested to him [to] place an advertisement in the local papers, asking that the parties who were present at the time communicate with him, and he did so. . . That on Saturday, July 7, 1923, said Stansell came to movant and informed him that he and said Davis were the men standing at the mail-box at the time of the conversation referred to, and then informed movant as to what he would testify; this was the first time that movant knew who said men were, and he had never at any time spoken to either of them about said transaction before July 7, 1923, and did not know what they knew nor what they would testify in said case." It thus would appear that more than three and a half years after the plaintiff's suit was filed and after two trials and the overruling of his original motion to avoid the second verdict, the plaintiff advertised for the two persons who he claims were present and heard the conversation upon which he relied to establish his contract. Assuming that there was no other reason whatsoever which would have authorized the presiding judge to overrule the extraordinary motion, the conclusion is not demanded that there was an abuse of discretion on his part in holding that the plaintiff had not shown the proper diligence in discovering and producing the alleged newly discovered evidence. This court cannot say that the judge could not have found that the plaintiff, in ordinary diligence, should have done long before what he ultimately did, by which the identity of the witnesses was discovered. The action of the court in overruling the extraordinary motion will not be interfered with. *Evans* v. *Grier*, 29 *Ga. App.* 426 (3) (115 S. E. 921); *Holder* v. *Farmers Exchange Bank*, 30 *Ga. App.* 400 (7) (118 S. E. 467); *Farmers Union Warehouse* v. *Boyd*, 31 *Ga. App.* 104 (119 S. E. 542).

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*

DECIDED DECEMBER 7, 1923.

Complaint; from Floyd superior court—Judge Wright. July 25, 1923.

*M. B. Eubanks, F. W. Copeland,* for plaintiff.

*Denny & Wright,* for defendant.